IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 14-46-RGA |
| | ) | |
| KENTAE WATTS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

Defendant filed a motion to suppress. (D.I. 16). The Government filed an opposition. (D.I. 20). The Court held an evidentiary hearing. (D.I. 22). The parties submitted post-hearing letters. (D.I. 25, 28).

The motion to suppress raised a number of issues, but most of them have fallen by the wayside. (D.I. 22 at 83 [agreeing the evidence established reasonable suspicion for a *Terry* stop]; D.I. 28 at 4-5 [agreeing that the evidence showed that there had not been a clear and unambiguous invocation of *Miranda* rights]). That leaves one issue, whether the State Police had obtained a valid consent to search the vehicle which the Defendant had been driving. This Memorandum Order constitutes the Court's essential factual findings and conclusions of law. *See* Fed. R. Crim. P. 12(d).

The essential facts, as established by the testimony at the evidentiary hearing, are as follows. On May 1, 2014, at about 14 minutes after midnight, Delaware State Police officers were informed by dispatch that there had been a burglary with shots fired on Jewel Street in

-1-

Seaford, Delaware. (D.I. 22 at 6-8). Corporal Simpson of the State Police was among the responding officers, and the first to interact with the vehicle being driven by Defendant, a few minutes after the dispatch. (*Id.* at 8). Cpl. Simpson, approaching Jewel Street on German Road, saw a vehicle turning from Nichols Road (which runs parallel to Jewel Street, and is one block over from it), and noted its greater than usual speed and erratic manner in making a left turn onto German Road. (*Id.* at 12-14). As Cpl. Simpson was turning onto Jewel Street, he saw the vehicle pulling into a driveway of the house at the corner of Jewel Street and German Road. (*Id.* at 15-16). He saw a man ("Truitt") getting out of the passenger side of the vehicle and running up to the front door of the house. (*Id.* at 15). His suspicions aroused, he turned his patrol car to be parallel to German Road, and turned on his lights to illuminate the scene at the front yard of the house. (*Id.* at 17). Other officers were arriving. Police (including Cpl. Simpson and Tpr. Grimes) accosted Truitt, detained him, and put him in a police vehicle. (*Id.* at 19). Truitt said he was visiting his girlfriend. (*Id.* at 20). An occupant of the house said the household did not know who Truitt was. (*Id.* at 27). Cpl. Simpson and another officer went to the vehicle, and ordered the occupant ("Defendant"), who was in the driver's seat, out of the car. (*Id.* at 19). Defendant was patted down and handcuffed. (*Id.*). Defendant was sweating.[1] (*Id.* at 21). Defendant was taken by Cpl. Simpson to Simpson's patrol vehicle, in which he was placed. (*Id.* at 19-20). Very little time had elapsed since Cpl. Simpson had first arrived on the scene. Cpl.

---

[1] The Government also recites that Defendant's clothes were "soiled" and that his shoes were muddy. (D.I. 25 at 4; *see* D.I. 22 at 21). The Government later argues the mud was "fresh" and not only on his shoes but also on his clothes. (D.I. 25 at 7). (I do not see any factual support for the "fresh" description, nor that the "soiled clothes" had now become muddy clothes.). In any event, there is nothing in the record that makes it apparent why the Government considers the muddiness of his attire a relevant fact as to whether he had just committed a home invasion.

Simpson asked Defendant multiple times where he was coming from and what he was doing. (*Id.* at 41). Defendant refused to answer these questions. (*Id.*). Cpl. Simpson asked him for consent to search the vehicle that he had been driving. (*Id.* at 20-21). Without hesitation, Defendant agreed to the request. (*Id.* at 22, 52). Cpl. Simpson had written consent to search forms in his patrol car, but chose not to use one to explain or memorialize this consent. (*Id.* at 43). After consent was given, Cpl. Simpson remained with Defendant while other officers searched the vehicle. (*Id.* at 23). They quickly found two handgun magazines.[2] (*Id.* at 23). While they were searching, Cpl. Simpson told Defendant he could revoke his consent to search at any time. (*Id.* at 43-44). Defendant did not do so. (*Id.* at 24). The entire elapsed time from Cpl. Simpson's first spotting the Defendant's vehicle to the recovery of the incriminating evidence from it was probably less than ten minutes.

The parties agree on the applicable law. A search can be done pursuant to consent if the consent is freely and voluntarily given. Consent can be express or implied, written or oral. The voluntariness determination is a question of fact to be determined from a totality of the circumstances. If an individual is advised of the right to refuse consent, that would be a factor favoring a finding that consent was voluntary.

> In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

---

[2] The Government represents that a "mask" and "gloves" were also found during the vehicle search. (D.I. 25 at 2).

-3-

*Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (citations omitted). When considering the totality of the circumstances, I note that Defendant is an adult and that he appears to be of average intelligence,[3] that he was not advised (before he consented[4]) of his right not to consent to the search, that the detention was extremely brief, that the consent was promptly given when first requested, and that there was no use of physical punishment. I also note that he was in a police car and handcuffed, and that there was a lot of police activity going on all around him.

I also note that Defendant had the capacity to choose when to consent and when not to consent. That is, he did not answer questions on the scene about why he was there, but he did later agree to answer questions at the Police Troops. Whether to answer questions and whether to consent to a search are independent decisions. The individual has control over whether the individual will or will not speak; if the individual does not speak, realistically, no one can make the individual speak. The individual has control over whether the individual will or will not consent, but the individual does not have control over whether the search does or does not take place. The police might obtain a search warrant; the police might search without a warrant; the police might obtain consent from someone else. Indeed, in my experience, it is common for a defendant to argue at trial that his or her consent makes it less likely that the defendant knew of the presence of the incriminating evidence, be it a magazine, a gun, or drugs.

---

[3] I say this on the basis of the Defendant's description of himself (D.I. 28 at 2) but also after having seen at the suppression hearing a portion of his interview on videotape. (D.I. 22 at 62-63, 70).

[4] I think the Government concedes that Defendant was not advised of the right to refuse to consent to search before the consent was obtained. (*See* D.I. 25 at 5-6). The Government emphasizes that after he consented, he was advised (while the search) was going on that he could revoke his consent. I do not think that is probative on the issue of whether the consent was voluntary in the first place.

-4-

All things considered, the evidence demonstrates that Defendant voluntarily consented to the search of the vehicle. His will was not overborne.

**THEREFORE**, this 26th day of March, 2015, **IT IS HEREBY ORDERED** that the motion to suppress (D.I. 16) is **DENIED**.

                                                                                          /s/ Richard G. Andrews
                                                                                          United States District Judge